Your Honor, it's the first case of the afternoon, Paul 211, 08-056, Cleveland State v. Olsson. On behalf of the appellant, Ms. Jillian Gosch. On behalf of the attorney, Ms. Diane Campbell. Good morning. Good afternoon. That's right, it was morning earlier. Ms. Gosch. Good afternoon. My name is Jillian Gosch and I'm here on behalf of Paul Olsson. There are two issues that I raised in my brief for Mr. Olsson. The first issue is whether or not the trial court erred or violated Olsson's due process rights when they failed to require the state to comply with the treatment plan provision under 725 ILCS 5-104-25G2. Pursuant to that part of the statute, there are certain requirements that are required to be submitted to the trial court so that the trial court can then conduct an appropriate review of the treatment that the individual is receiving. In this case, what Elgin Mental Health did was that they filed fitness reports in regards to Mr. Olsson. And I'll get to the issue of fitness in my second argument, but they filed these fitness reports but did not necessarily comply with the statute in that they specifically did not include an assessment of his treatment needs. They did not describe the services that they're recommending for treatment. They did not state what the goals of each type of the treatment were or an anticipated timetable for accomplishment of those goals. But now, if these treatment reports were flawed, why would the failure to file treatment reports that complied with the statutory requirements invalidate the order that was entered after the 180-day hearing in the G2I period? Because the statute, its language is mandatory. It's not permissible. This isn't an option for them to comply with. What's essentially happening now is that Mr. Olsson has been in this Elgin treatment facility without a treatment plan for years. On six years, as a matter of fact. Correct. Without any sort of oversight by this court, by the trial court. The statute, it's not permissible. It's just like the Mental Health and Disabilities Code section. He's entitled to the same type of protection because he's involuntarily committed under G2. The G2 section does state that he is entitled to the same protections under the MHDDC. In addition to that, they could have, at the hearing, they could have fixed that, I guess, by Dr. Malis' testimony, but they did not. They did not have Dr. Malis testify to any specific findings, any specific treatment, any specific areas where they thought that they could improve upon the care for Paul. That's the only way that they could have rectified not filing the treatment report. Counsel, let me ask you this. There's an overarching concern, due process, that a defendant could languish for years without something happening. Correct. And I think that's a legitimate concern you're expressing. We know, however, also the statute contemplates that either side, the state or the defense, could request a hearing, correct? Correct. And I don't know if that was done. It appears from the record that it may not have happened in this case. It's not totally clear why the defense could have asked for a hearing. But does the court have an affirmative obligation anywhere, under the case law or in this code, to do something to alleviate the situation where maybe the attorneys aren't doing something? Your Honor, I believe that they do. And I think some of the cases that I cited in my brief, and I will specifically point out which ones I'm referring to, I think that they allude to the fact that the court is responsible for Mr. Olson's care in this case. Now, if Mr. Grant, Mr. Olson's attorney, is not going to request a fitness hearing, or the state's not going to request a fitness hearing, it is the duty of the court to make sure that Mr. Olson is receiving appropriate treatment, that if it's not working, that they find appropriate measures, maybe a different facility, maybe a different doctor, to avoid the situation that we're in right now. Why does it say that in the statute? It doesn't say that in the statute, Judge, but what I am going to point out to you, a few cases that I cited in my brief. But aren't those cases related to a different statute? I mean, we're dealing with the criminal code. Yes, we are. The cases that you have cited, and I believe you will, if they're the ones that you put in your brief. It is. Are not cases under the criminal code. They're cases under the Mental Health and Disabilities Act, correct? That's correct. And I believe that you can take those cases and apply them to Paul's situation, though, because as it says under 725 ILCS, at the G2 section, any rights that somebody has under the Mental Health and Disabilities Code, they now have when they're subjected to the G2 period. Do you get that in G2? Yes. There's a part of the statute, Judge, and I don't have the statute in front of me, but there's a part of the statute that indicates in 725 ILCS that says they will and shall be treated in the same manner as a civilly committed patient for all purposes. Is that what you're referring to? Yes, Your Honor. So that, you feel, gives them the same rights? Yes. So where the statute, the Mental Health and Disabilities Code, required a treatment plan to be filed as almost a prerequisite to having a hearing, you're saying we can read that into this statute as well? Well, what I'm saying, in the Mental Health Code, it does require as a prerequisite that you have that treatment plan filed. G2's a little bit different. It doesn't require that up front, but what it says is that if somebody is committed pursuant to G2, within the 30 days, they have to have a treatment plan. And then it outlines what the treatment plan requires. And in this case, that wasn't done. And what that has, the effect of that is it has made it almost impossible for Judge Stride to know what's going on down in Elgin. They know he's not getting any medication. There's none prescribed. So that's part of treatment, obviously. Correct. But they don't specify what programs that they could put him in. And it would not be the first time that a person who suffers from a mental illness is resistant to treatment. That happens all the time. And it happens many times in cases where someone is diagnosed with pedophilia. They are resistant to treatment because they don't believe that they have a problem. So there are, but there have to be ways for these doctors or these facilities to treat that and to make adjustments for the certain type of person that they're dealing with. So you're asking us to reverse the findings of the trial court implicitly is one of the things you're asking for. What specific relief then would you be suggesting to remand cover? The trial court to do what specifically? I think that the case should be remanded for there, one, to be a sufficient hearing to determine whether or not Paul is in fact fit or unfit at this point. I would submit to this court that he, I would agree with Dr. Mattis that he is fit. And that is important to Paul because Paul doesn't want us attorneys helping him. He wants to represent himself or he wants to find his own attorney. And until he's labeled fit, he's not going to be able to do that. And I think part of that is hampering his progress at Elgin. Additionally, I think that after the fitness hearing, it should be remanded for them to comply with the treatment plan provision. Elgin should be required to submit a report, a plan to the court saying this is, these are the steps that we're going to take. And then when they come back for their six month review hearing, they can report to the court and say, this is what happened. On this day, this happened. He refused this. He did this. We wanted him into this program and he refused. Under what authority do we order a fitness hearing? Well, Judge, I think you order it under a due process argument. In this case, Mr. Olson, as I stated in my brief, has been, he's basically been warehoused. I understand that. But, you know, the legislature writes the statutes and we're supposed to not add things or delete things to an unambiguous statute. This statute, if we declare it to be unambiguous, says that every 90 days this report is supposed to come and then someone can ask for a fitness hearing. It doesn't say the appellate court should order a fitness hearing. It just says someone, the defense attorney, the defendant himself, the prosecutor, the judge. Someone gets this report and asks to check on the fitness hearing. Now we have a separate hearing. Every 180 days we have to see whether he's still subject to any voluntary commitment. Correct. Now that first 180 days, you've repealed two orders, one 180 days and 90 days thereafter. The first order was 180 days. The court made findings pursuant to subsection I, correct? Correct. Now are you saying that those, you're not appealing the actual order, correct? I mean, you're not appealing that finding? No. No, no. Then the judge said, as I recall, correct me if I'm wrong, said we're going to have a treatment plan review in 90 days. And then conducted another subsection I here in 90 days later. Or at least made findings similar to the 180 day hearing. He did, in fact, make that statement on the record. You're correct. However, my submission to the court is that what was prepared and submitted to the court is insufficient to comply with G2's requirements. And on top of it, they did not rectify that situation by having Dr. Nowitz testify to the specific findings of what he did during the treatment period. When you say that situation, you're talking about a treatment plan review. Yes. Not under I. Not under I. Under the previous section. Correct. Counsel, I believe the law is clear that attorneys cannot stipulate that somebody is unfit. Correct. Technically. The court has to make its own independent assessment of that. They can stipulate to a doctor's report, but not to the ultimate conclusion of unfitness. That is correct. In this case, the defense counsel, as I read the record, said, well, he's unfit. Yep. Essentially stipulating that he was still unfit. Can an attorney do that? Can they stipulate unfitness because there's a presumption of unfitness? What's your position on whether or not the attorney could stipulate ad infinitum that he's unfit? I don't believe an attorney can, Judge. I think it's inappropriate. The initial, when you have an initial fitness issue, you as the attorney can stipulate to the findings, to the report of the doctor. You cannot stipulate to whether or not somebody is fit or unfit because that is the determination of the court. So even unfitness, you can't stipulate? You cannot. And I would... What case law do you have that stands for that proposition? Judge, I don't have anything directly on point, and I did look. I did look at that issue. I don't have anything directly on point, but I think it's, it just goes to follow with the rules of you can stipulate to findings, but you can't stipulate to the ultimate question because that is an issue for the judge to determine or the jury. In this case, I'm not exactly certain why Mr. Olson's attorney said what he said. I don't know why he has the opinion that he has because the record is deplete of any specific instances or things that they are referring to. Now, obviously, they must be referring to things that happened in the past, but as we all know, fitness is, you know, it's not a static disease. You're fit one minute, next minute you could be unfit. We see that all the time. Did the judge ever ask him on what basis he was arriving at that conclusion or what was he basing that comment or stipulation on? He did not. Judge, the sole inquiry was the court bringing it to the attorney's attention, saying we should address his fitness. They had a report by Dr. Malice that stated that he was in fact fit. That was his belief, Dr. Malice's belief, and both attorneys, the state and the defense then said, well, we think he's delusional and unfit. Is this at the first hearing or the second hearing? This is at the first. And the first, if I'm not mistaken, if we look at that as a subsection I hearing, we don't really have to talk about fitness if we look at just the black letter law of the statute. That's correct. The reason I bring it up is because, as your honors know, this case has been around for a long time and it's going to be here for a long time, I'm sure, with yet another appeal with this case. And so I bring it up in the sense of judicial economy and that this is an ongoing issue with these cases. Mr. I'm sorry, Dr. Malice did find him fit. They both said he's unfit, but there's nothing in the record to tell me why they think he's unfit. And they hadn't even seen Paul for almost nine months prior to this hearing, to any of these hearings, which which is concerning because, as I said, and from what it would appear from the fitness report that Dr. Malice filed, by all intents and purposes, Paul is behaving appropriately at the facility. He's not engaging in too much treatment, but he's not causing a problem either. Do you feel that G2 satisfies due process on the fitness review aspect, where if we look at G2, at least an argument can be made that the plain meaning of that statute is that everybody gets this report every 90 days and somebody can ask for a hearing if they want one? Sure. And so it's not incumbent upon the court to every 90 days or even over 180 days review fitness. Do you believe, I mean, I shouldn't say that because when you get the report in, you should be reviewing fitness, the 90 day report, because that should address fitness and the court should be reviewing that every 90 days. But I'm talking about a review in court where you call everybody in and talk about it in court. Do you feel that that statute, if it, as I explain it to you, is the way we're supposed to read it, do you feel that that satisfies due process? In this case, I don't believe it does. I don't believe that Paul has been given the opportunity or the benefit of a legitimate hearing. I think if the statute is used the way that it's supposed to be and he's given a legitimate hearing, then yes, I think that it would be appropriate and it would have protected his rights. But in this circumstance, I don't believe so. One of the other issues I have with this is that the court has completely done away with Dr. Malice's opinion in regards to fitness but yet accepted his diagnosis of pedophilia. And there's no other expert opinion that was given or presented to the court. All right, but what do you mean by a legitimate hearing? I mean, there was testimony that was presented at that hearing. Mr. Olson refused to appear at that hearing at either one of the hearings. Yes, he did. What would be, quote, a legitimate hearing? I believe that based upon the information the court was presented with, that the court should have either requested or appointed another expert to conduct an evaluation of Mr. Olson to determine whether or not there was a difference of opinion as to his fitness. Because the flip side of that is that the court is now not accepting their own expert's opinion, whose opinion apparently is not going to change. So what we have here is just, Paul is just going to be in Elgin. You're saying you have gridlock and that's not moving. Yeah, it's just Paul is going to be stuck in Elgin because the court wants him to cooperate with his attorney. Paul doesn't want to cooperate with the attorney, so Elgin is saying he's fit, let's get rid of him. So what are we supposed to do with him? Somebody could ask for another opinion, though, under the statute. They could. Thank you. Good afternoon, Your Honors. First, I'm going to review the timeline just briefly. I'm sorry? I'm going to review the timeline of what's happened and where we are just briefly. In 2005, there was the indictment. In 2007, the defendant was found unfit. In December of 2009, there was the discharge hearing where he was found not guilty and was then set for an extended period of treatment. There was a motion for his commitment by the state, and in February of 2011, he was found subject to admission to the Department of Human Services until 2037. So that is his status right now. The two orders that we are reviewing are his first six-month review and then a subsequent review 90 days after that. So at this point, the defendant is in the custody of the Department of Human Services until 2037 unless there is some sort of court finding that he should be released. Do you agree that there's not a treatment plan that complies with the statute in the file for these? I do not agree with that. First of all, I would like to make a forfeiture argument, and I do make that my brief. If the defense or defense counsel had a problem with the report that was submitted, that should have been brought up at trial when it could have been in some way remedied. You mean at the hearings? Right. I'm sorry, Your Honor. There was no objection to the reports that were submitted. In the defendant's appendix to his brief, there are the two reports, and in between those two reports is a letter, and that is from the facility saying that the following report is the treatment report. And that, again, is labeled as an evaluation. So although they are labeled as evaluations, they are, in fact, treatment reports. Do they really talk about treatment needs, timetable, goals, and services? Do all those reports talk about those things that are supposed to be talked about? To the extent that they can. In this case, the defendant is thwarting that. Since 2005, he has refused almost all treatment. In my brief, I note that in the first report, which I say is a valid treatment report, particularly when supplemented with Dr. Malice's testimony, they were unable to confirm the personality disorder because the defendant would not cooperate in psychological testing. It also says that he was subject to involuntary, oh, sorry. Since the previous court ruling, the defendant was found unfit, and that it says that he has continually refused to accept treatment. So if the defendant is both refusing to be evaluated and refusing treatment, then there's very little to include in the sort of treatment program. But the court does put in, for instance, when he received grounds privileges because he had been attending his staffing. Tell me again, what are you reading from? This is page six and seven of my brief, and I am quoting from the May treatment report. And that is a copy in the defendant's appendix. So if somebody's not cooperating, does that alleviate the need for a treatment plan? No, but that does illustrate the difficulty you would have in doing a comprehensive one. There's also the defendant's history that he has continually been refusing treatment since 2005. I think it was Justice Zinoff noted that in this report, they do say that there was no psychotropic medication prescribed. So obviously they are looking at different methods to try and treat. But at this point, the defendant is and always has been resistant to any treatment. What do you make of the fact that the treating doctor in the department says he's fit? I think that that is certainly his opinion, but ultimately the question of fitness is for the trial court. In this case, the trial judge, Dr. Mallis, testified he was cross-examined at the hearing, so the judge had additional information. He also had the faxes from the defendant, which explained that he was refusing to come to the hearings because of the apparently statewide conspiracy against him and his refusal to attend the, quote, sham hearings. So the doctor has not only his prior experiences with the defendant, but he has these faxes, which explains that, in fact, while Dr. Mallis's opinion is that he could cooperate with counsel, he in fact is not, and he's not cooperating with counsel as illustrated by the faxes because of this sham hearing and the conspiracy against him by virtually everyone he subsequently sues. So, I mean, there is additional information besides Dr. Mallis's testimony, and that is what the trial judge exercises his discretion as he's required to do and finds him unfit. I'd like to point out that at this point the defendant is subject to his admission to DHS because of his mental illness and the fact that he is a danger to public safety. And that is there are requirements for the status reports and for the hearings, and this is according to the 180-day hearing section. And under that, that tells you exactly what the trial judge has to find in order for the defendant to be subject to continued admission. And that is trial court has to make a finding that he's subject to involuntary admission and says this is burden of proof. But basically what is happening now is the trial court has to, in order to have him continually confined, the trial court has to make the finding that he is mentally ill and a danger to public safety. And can the court do that in just a stipulation or a comment by the attorneys? Is that legally sufficient? He didn't do that with the stipulation. Oh, but can it be used for future reference? Can that go on? Can you stipulate to that? No. You can stipulate to a report, and you can stipulate that if Dr. Mallis were called, he would testify that this was in his report. But that is as much as any party can do. It is required that the trial judge exercise discretion and make this determination. Both on fitness and on fitness, you're saying? Yes. Okay. And the trial judge has done this. Do you have any case law that supports that? Excuse me? Do you have any case law that supports that? I'd ask opposing counsel. I would have it at my office, and I would be happy to send you a letter with it. But I cannot recall off the tip of my head exactly. What was the second hearing? The second hearing was 90 days after. I'm not sure exactly why. It wasn't one that required 180 days because there is, every six months, they're required to do the hearing, which is a safeguard against any warehousing. But the court made the 180-day findings at that 90-day hearing, though. So they all treated it as a 180-day hearing, even though it was 90 days, right? Correct. They took it, like, as a status. And certainly the court is within its discretion to do that, or it can be requested by either party to have an intermittent hearing. So certainly that's another due process protection for this defendant is that he didn't have to wait the whole 180 days. He had a 90-day status. Well, the trial judge said he was going to review the treatment plan on that 90-day, which sounds like a 90-day treatment plan review to me. But he didn't. He, in fact, did look at, there was another treatment plan, and that is what the facility refers to as the treatment plan. And, again, that's in the appendix for the defendant's brief. The facility refers to it as a fitness evaluation. Excuse me? The facility refers to these reports, the October 4 letter, the report dated 9-28. They are both titled as fitness evaluations, but if you look at the letter between the two, it says it's not only fitness evaluation, it is the treatment program. And, again, since the defendant is refusing to cooperate, it's very hard to get a treatment plan. But, essentially, it covers all the bases that they can do within those limitations. If you look at the purpose of the treatment plan, which is 405 ILCS 5-3-8-14, the purpose is to ensure that the recipient is receiving adequate and humane care and services and to ensure the recipient continues to meet the standards for involuntary confinement. And that is what is done within the bounds of that report. It says that he's been offered. It mentions, as I said, when he is cooperating. The statute talks about the five items, and the 90-day report is supposed to provide a current summary of the five items required in the treatment plan. And the statute I'm looking at is the one we're talking about here that he's committed under, which is 104-25. It says the treatment plan should have these five things in it, and every 90 days there should be a report, and the report should summarize those five things. And within the context of the report, I believe all five of those points are covered. It's not set forth in the exact order or the function, and certainly it could be clearer if they follow the bullet point with exactly those five points. But all of that information is in there, particularly when it's supplemented with Dr. Malis' testimony at the hearing. Now, opposing counsel felt that the hearings on the issue of fitness specifically were lacking significantly, weren't legitimate hearings. I disagree with that. Doesn't Green require more than we saw here? No. Green requires that evidence be presented. Here, Dr. Malis has, as I said, testified. He obviously consistently has found the defendant to be fit, but he is cross-examined by the attorney. The judge hears that testimony. He has the faxes from the defendant to consider and the defendant's prior behavior. So all of those combine for the trial judge to have sufficient information for finding both that, contrary to Dr. Malis' opinion, that he is unfit for trial, and in corroboration. I'm sorry, you said contrary to Dr. Malis' testimony? The trial judge's finding is that he's unfit, sorry. But they both are totally in sync with the results of the hearing, which is that the defendant is mentally ill and subject to continued involuntary admission because of his danger to the public safety. Does a subsection I hearing require a fitness determination? I don't believe so. I think when you're talking about the hearing, there's nothing, when I was reading through the statute, there is nothing that particularly refers to the status report or the progress reports or whatever you term them in the actual hearing. It just lists what the trial judge's verdict proof is and what findings he has to make. So while you would assume, of course, that that's going to be one of the methods that they would use to determine that, there's no requirement that the treatment report be at the hearing. In this case, it was used in both instances for both of the hearings, but under the statute, I don't see a requirement. There is only the requirement that they be filed in the court. So every 90 days, the treatment is corrupted. And at this point, as I said, he's being detained because of the mental illness and the danger to public. He's not being detained because he is fit or unfit per se. Well, then what's the purpose of the statutory requirement that the treatment plan report also contain an opinion as to defendant's fitness and the fact that that's required? I mean, doesn't that lead to the implication, at least, that the trial court has to conduct periodic fitness hearings, whether or not the parties request it? There's no requirement for a fitness hearing. There's only the requirement for the findings for that. I think this is one of the most poorly worded statutes I've read in a long time. I think at different points, there were sections that were added on and taken off. And I think as a result, the language tends to be very mixed. But at this point, the fitness in itself is not relevant to the defendant's continued detention with DHS. I mean, he could be fit or unfit, but if he's still mentally ill and a danger to public safety, then he is in DHS until 2037. Do you agree with counsel that the beginning language of the statute that I read gives the defendant all of the rights of anyone else who is civilly committed and that, therefore, the cases that apply to persons who are civilly committed would apply here, even though we're dealing with the criminal code of procedure? Yeah, the language that you're referring to is the 10425G2 language. And that says that if he's remanded and committed to the Department of Human Services, he should be treated in the same manner. And I believe that is as far as hearings go. It does retain jurisdiction for the criminal courts to have the hearings, but those should be under the same protections as afforded the mental health code. And within the mental health code, it does mention, in particular in relation with dispositional reports, that those can be supplemented with a doctor's testimony at a hearing. And that is what has happened in this case. Is there an actual treatment plan? Does anybody know if there's a treatment plan? Yes and no. At this point, because the defendant has refused to cooperate with evaluations, they mention at one point they don't know if he is a borderline something or other, I can't remember, but they can't eliminate that because he won't participate in an evaluation. It's clear from the record that since 2005, he has, on very rare occasions, agreed to an occasional participation in some sort of treatment, but he has never agreed to any sort of treatment for his mental illness, particularly for the pedophilia. So at this point, it's a case of you can lead a horse to water, but you can't make him drink. So at this point, there's very little that the facility can do. They can't order him or force him into treatment. That would be, A, against his due process rights and highly ineffective. Would that eliminate the need for a treatment plan? No. Because it ends up in a circular reasoning. How would the defendant then theoretically require a treatment plan review if there's no treatment plan in place? There is a treatment plan in place, and they keep offering him things. And I think in the second treatment plan, they mentioned that he had attended some sort of group for a short period of time, but then he refused the dialectic behavior therapy group. So that's mentioned in the report, which was the only recommended group he had been willing to attend some of the time. Which report is this? This is the November report. It's on page 8 in my brief, is what I'm referring to. So, again, the facility is doing their best to offer him treatment, but he is refusing it. They had the staffings, which they mentioned. And, in fact, when the defendant attends the staffing, he's rewarded with some on grounds privileges. So they are doing their best to encourage, but this is a highly resistant therapy. I understand that. But the statute, I think you would agree, if it says treatment plans are required, that's independent of whether or not the defendant cooperates. It doesn't say only if the defendant cooperates with it, does it? No. This, I think that his lack of cooperation explains, this is not by any stretch of the imagination a model treatment plan or a model report, but it does adequately cover all the bases, especially with Dr. Malice's testimony, particularly in light of the fact that there was no objection to these reports at the times of the hearings where it could have been corrected or the trial court could have ordered an update or anything. These, I think, are sufficient. As I said, they're not modeled, but they are adequate. Thank you. Ms. Gosch? One of the things I'd like to clarify, just for the record, Paul was not diagnosed as being suffering from pedophilia until right prior to the discharge hearing in 2009. His initial diagnosis was delusional disorder with a rule out of pedophilia. They were unable to diagnose that until that time and probably diagnosed it so that he was able to stay penelgent. And given the facts and circumstances of the underlying charges, it's not a stretch of the imagination to make the diagnosis, but I just wanted to point that out, that he was not initially diagnosed as being suffering from pedophilia back in 2007. The other thing that I wanted to point out to the court is that, specifically in regards to Judge Streich's findings at the initial, the first hearing that we had in August, the only specific finding that he made was that because of Paul's previous behavior, which was not further specified, and his lack of cooperation with counsel, that was why he was finding him unfit. So I just wanted to make that clarification, that those were the only two specific findings that Judge Streich made on the record. And it is the position of Mr. Olson that the court should make further findings in that regard. And in this case, it would be inappropriate to find him unfit because there was an expert that said he was, in fact, fit, and there was no other evidence presented to the court. And the authority for the additional findings needing to be made is? Well, I think that goes back to the Green case, Judge. It indicates that a subsequent fitness hearing is no less stringent than the original fitness hearing, and so any regulations or rules or standards that the court should follow in finding somebody unfit initially should be followed in subsequent hearings. Is there a treatment plan or not? There is no treatment plan, Judge. You have two fitness reports. That's it. Okay. Those seem to be updates or 90, potentially 90-day updates of a treatment plan. My question is, is there a treatment plan, an initial three-day treatment plan? No, no, Judge. If there has ever been a treatment plan for Mr. Olson, I have not seen it. It's not contained in any record or file in the Lake County Courthouse or any of the pleadings that I've received. Okay. Thank you very much. At this time, the court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day. Thank you.